# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| ANTHONY WILLIAMS, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   Case No. 4:21-00579-CV-RK |
| | ) |
| USAA SAVINGS BANK, | ) |
| | ) |
|     Defendant. | ) |

## ORDER

Before the Court is Defendant USAA Savings Bank's ("Defendant") motion for summary judgment. (Doc. 85.) The motion is fully briefed. (Docs. 86, 92, 93, 98.) For the reasons below, the motion is **GRANTED IN PART and DENIED IN PART**:

Defendant's motion for summary judgment is **GRANTED** as to two of the three categories of actual damages claimed by the Plaintiff. Specifically, summary judgment is granted as to (1) economic damages, and (2) emotional distress damages stemming from Plaintiff's claim that Defendant negligently violated the Fair Credit Reporting Act ("FCRA").

The Defendant's motion for summary judgment is **DENIED** as to (3) damages to creditworthiness and credit capacity, and also denied in all other respects.

## Background

This case arises from charges on Plaintiff Anthony Williams' ("Plaintiff") accounts with Defendant USAA Savings Bank. Plaintiff alleges the charges are fraudulent, and Defendant maintains "the purchases in question were normal, non-suspicious activity, and that the accounts were not fraudulent[.]" (Doc. 86 at ¶ 14.)

Plaintiff filed his Petition alleging that Defendant willfully or negligently violated § 1681s-2(b) of the FCRA by failing to respond to Plaintiff's reinvestigation requests and by failing to supply accurate and truthful information. (Doc. 1-3 at ¶ 68.) Plaintiff seeks actual, statutory, and punitive damages, as well as attorney's fees and costs under 15 U.S.C. §§ 1681n & 1681o. (Doc. 1-3 at ¶ 74.)

In late November and early December of 2019, Plaintiff was vacationing in Colombia, South America, a country he has visited several times in the past few decades.[1] (Doc. 92 at ¶¶ 1-2.) While visiting Colombia, Plaintiff routinely stayed in apartment-style lodging as opposed to a hotel. (Doc. 92 at ¶ 3.)

Plaintiff has two credit card accounts with Defendant, one ending in 3733 and the other ending in 6927. (Doc. 92 at ¶ 4.) During this specific trip to Colombia, Plaintiff asserts that he always had his USAA credits cards in his possession except for when they were placed on the airport conveyor belt at the customs checkpoint. (Doc. 92 at ¶ 10.) On December 1, 2019, two identical charges of $1,135.56 were made on each of Plaintiff's USAA credit card accounts to merchant "HOTEL VILLA OLYMPIC DE." (Doc. 86 at ¶ 1; Doc. 92 at ¶ 6.) Plaintiff maintains that he never stayed at the Hotel Villa Olympic and alleges these charges are fraudulent.[2] (Doc. 92 at ¶¶ 8, 9.)

In January 2020, after reviewing his monthly credit card account statements, Plaintiff contacted Defendant to dispute the charges made on his cards to Hotel Villa Olympic. (Doc. 86 at ¶ 3; Doc. 92 at ¶ 11.) These are the only charge Plaintiff disputes from his late 2019 Colombia trip. (Doc. 92 at ¶ 12.) Defendant responded to Plaintiff's disputes by sending him two letters (one for each of Plaintiff's USAA credit cards) stating that Defendant had received the disputes, but that more information was required to investigate the transactions in question. (Doc. 86 at ¶¶ 4-6.) For the dispute on the card ending in 3733, Defendant asked Plaintiff if he had contacted the merchant to resolve the dispute and asked Plaintiff to send evidence, such as a bank statement, to support that the merchant received payment by other means. (Doc. 86-4.) For the dispute on the card ending in 6927, Defendant asked Plaintiff to send: (1) a detailed letter explaining the dispute, (2) the date the service was received, and (3) documentation that supports the nature of the dispute.

---

[1] Except where otherwise noted, these facts are taken from the parties' statements of uncontroverted material facts. The Court has omitted some properly controverted facts, assertions that are immaterial to the resolution of the pending motion, assertions that are not properly supported by admissible evidence, legal conclusions, and argument presented as an assertion of fact.

[2] To support the proposition that Plaintiff never stayed at the Hotel Villa Olympic, Plaintiff cites his deposition testimony when he was asked if he had ever stayed at the hotel, to which he responded in the negative. (Doc. 92-4 at 30:21-23.) Plaintiff also provides a letter from the hotel stating that he never stayed there, to which Defendant objects as hearsay. (Doc. 92-7; Doc. 93 at ¶ 9.) Defendant, however, never explicitly controverts the proposition that Plaintiff never stayed at the hotel; rather, Defendant points to their internal investigations which concluded that there was insufficient information to determine the hotel credit card charges on Plaintiff's account were unauthorized. (Doc. 93 at ¶ 9.)

(Doc. 86-5.) In this letter, Defendant also asked Plaintiff if he contacted the merchant to resolve the dispute. (Doc. 86-5.) Defendant gave Plaintiff two weeks to submit the supporting documentation for his disputes. (Doc. 86-4; Doc. 86-5.)

In response to Defendant's request for more information, Plaintiff submitted a personal statement that he did not stay at the hotel in question, and he provided a letter from the hotel that stated, in Spanish, that Plaintiff had not stayed there during the timeframe when the charges appeared on his account. (Doc. 86 at ¶¶ 7, 8; Doc. 92 at ¶¶ 13, 14.) Defendant then sent two more letters to Plaintiff (again, one for each of Plaintiff's USAA credit cards) in February 2020, stating that the documentation provided was insufficient; as a result, Defendant determined that a billing error did not occur and concluded that Plaintiff remained liable for the transactions.[3] (Doc. 86 at ¶¶ 9, 10; Doc. 92 at ¶ 15.) After this determination Plaintiff believes he called Defendant to reopen the disputes. (Doc. 86-2 at 52:1-53:1.)

Roughly a year after Plaintiff's initial contact with Defendant to dispute the Hotel Villa Olympic charges on his card, Plaintiff (with the assistance of counsel) contacted credit reporting agencies Equifax, Experian, and Trans Union (collectively, the "CRAs") to again dispute the charges on his USAA credit cards, claiming the high balances on his accounts were the result of fraudulent charges. (Doc. 86 at ¶¶ 11, 12; Doc. 92 at ¶ 22.) Plaintiff contacted the CRAs a second time in late April of 2021 for the same purpose. (Doc. 86 at ¶ 13; Doc. 92 at ¶ 22.) Since Plaintiff's first contact with the CRAs in February 2021, there have been no "hard inquiries" on Plaintiff's credit. (Doc. 86 at ¶ 18.)

Defendant received eight Automated Consumer Dispute Verification forms ("ACDVs") from the CRAs regarding Plaintiff's disputes, the first of which is dated February 14, 2021.[4] (Doc.

---

[3] Here, Plaintiff contests Defendant's assertion of fact. Defendant states that Plaintiff did not provide sufficient supporting documentation to prompt Defendant to continue its investigation into Plaintiff's hotel charge dispute. (Doc. 86-8; Doc. 86-9.) Plaintiff points out that he did send Defendant information that they requested, including a personal statement about the dispute and a letter from the merchant hotel stating that Plaintiff never stayed there. (Doc. 92-7; Doc. 92-8.) Also, Plaintiff notes the letter from Defendant for the card ending in 3733 states, "Provided document was not in our language please provide in English," to support the assertion that Defendant had documents from Plaintiff in its possession regarding the dispute—that Defendant specifically asked for—yet chose to ignore those documents. (Doc. 86-9; Doc. 92 at ¶ 15.)

[4] Plaintiff asserts that the ACDVs refer to the high balances on Plaintiff's account. (Doc. 92 at ¶ 30.) Defendant controverts this statement of fact, claiming the ACDVs do not mention high balances but refer to an account fraudulently opened or an account take-over, depending on how the dispute was coded. (Doc. 93 at ¶ 30.) This contention is immaterial; the relevant fact for purposes of Plaintiff's FCRA claim is that each ACDV makes some reference to Plaintiff's allegations of fraud. (Doc. 92-14.)

3

92-14.) In May 2021, Defendant also received a fraud affidavit from Trans Union that was completed by Plaintiff in which he claimed that he was a victim of identity theft. (Doc. 92 at ¶ 24.)

Defendant maintains protocols for investigating a consumer dispute by which each dispute gets an independent review when Defendant receives multiple disputes as to one consumer. (Doc. 86 at ¶¶ 15, 16.) When investigating consumer disputes involving allegations of fraud, Defendant refers the dispute from the consumer report dispute team to the fraud department, regardless of whether the consumer alleges that the account in question was fraudulently opened or has been taken over.[5] (Doc. 92 at ¶¶ 27, 28.) When a consumer alleges a charge is fraudulent, Defendant's fraud dispute team does not give any more weight to a consumer's affidavit or statement under penalty of perjury than it does to other types of fraud allegations. (Doc. 92 at ¶ 32.) After the dispute is sent from the consumer report team to the fraud team, the fraud department will then determine the accuracy of the fraud allegation and the consumer report dispute team will respond accordingly. (Doc. 92 at ¶ 27.) Defendant's fraud department conducted ten investigations into Plaintiff's accounts. (Doc. 92 at ¶ 31.) Defendant's fraud dispute team did not reach out to Plaintiff concerning his disputes. (Doc. 92 at ¶ 34.)

After Plaintiff first reached out to Defendant in January 2020, but before Plaintiff contacted the CRAs in February 2021, Plaintiff purchased a vehicle with a car loan that he applied for over the phone with Mazuma Credit Union ("Mazuma"). (Doc. 86 at ¶ 19.) Plaintiff had previously been approved for a car loan from Mazuma but had to re-apply in January 2021 when he purchased the vehicle. (Doc. 86 at ¶ 20.) Mazuma inquired into Plaintiff's credit history in October 2020, which was likely related to the car loan that Plaintiff ultimately obtained. (Doc. 86 at ¶ 21.) Plaintiff is unsure whether the disputed hotel charges had an impact on the terms of the car loan offered by Mazuma. (Doc. 86 at ¶ 22.)

Also, Plaintiff testified that he owned credit cards with Barclays and Capital One that had been cancelled due to lack of usage, and when Plaintiff reapplied to open those accounts after December 2019, the credit limits were lower. (Doc. 86 at ¶ 23.) Plaintiff noted he has "pretty good credit" and his debt-to-credit ratio was actually better when he reapplied for the Barclays and Capital One cards; thus, he was "shocked" the credit limits were lower when he reopened the cards.

---

[5] Although Defendant controverts the statement of fact referenced in paragraph 28, the contention refers to how the dispute was coded by the CRAs in the ACDVs sent to Defendant. (Doc. 93 at ¶ 28.) Again, the relevant fact for purposes of Plaintiff's FCRA claim is that the only two codes referenced (code 103 and code 104) are both related to fraud allegations. (Doc. 92-5 at 76:15-77:9.)

4

(Doc. 86 at ¶ 24.) Regardless, Plaintiff admits he has not reached the credit limits on either his Barclays or Capital One credit cards. (Doc. 86 at ¶ 25.) However, Plaintiff asserts that, according to a credit report he received from one of the CRAs, keeping account balances as low as possible can have a positive impact on an individual's credit. (Doc. 92-11.)

Plaintiff states that because Defendant included the disputed charges on his account balance, he was forced over his credit limit for the card ending in 6927. (Doc. 92 at ¶ 19.) However, Defendant admits only that the appearance of all the charges on Plaintiff's credit card statement pushed him over his credit limit. (Doc. 93 at ¶ 19.) Plaintiff also testified that the appearance of the disputed charges harmed his credit score because Defendant reported Plaintiff's balance with the disputed charges to the CRAs, which resulted in an inflated debt-to-credit ratio. (Doc. 92 at ¶ 25.) Plaintiff had also planned on transferring balances from other credit cards onto his USAA cards to take advantage of lower interest rates, but was unable to because of the credit limit. (Doc. 86-2 at 18:16-19:11.) Lastly, although Plaintiff does not remember the specific reason for denial, Plaintiff testified that he had been "denied credit for a credit card" at some point since December 2019. (Doc. 86 at ¶ 26.)

Further facts are set forth as necessary.

## Legal Standard

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a). The Court views the evidence "in the light most favorable to the nonmoving party and giv[es] the nonmoving party the benefit of all reasonable inferences." *Fed. Ins. Co. v. Great Am. Ins. Co.*, 893 F.3d 1098, 1102 (8th Cir. 2018) (citations and quotation marks omitted). "If the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, summary judgment should be granted." *Smith-Bunge v. Wis. Central, Ltd.*, 946 F.3d 420, 424 (8th Cir. 2019) (citation omitted).

At the summary judgment stage, the movant must "support" its motion either by "citing to particular parts of materials in the record" or by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); Rule 56(c)(1).

In resisting summary judgment, the nonmoving party may not rest on the allegations in its pleadings, but must, by affidavit and other evidence, set forth specific facts showing that a genuine

issue of material fact exists. Rule 56(c); *see also Thomas v. Corwin,* 483 F.3d 516, 527 (8th Cir. 2007) (mere allegations, unsupported by specific facts or evidence beyond a nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment). An "adverse party may not rely merely on allegations or denials, but must set out specific facts – by affidavits or other evidence – showing [a] genuine issue for trial." *Tweeton v. Frandrup*, 287 F. App'x 541, 541 (8th Cir. 2008) (citing Rule 56(e)). In so doing, the nonmoving party "cannot create sham issues of fact in an effort to defeat summary judgment." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 402 (8th Cir. 1995) (citation omitted). To controvert a factual position, the nonmoving party must "refer specifically to those portions of the record upon which [he] relies." *Jones v. United Parcel Serv., Inc.*, 461 F.3d 982, 990 (8th Cir. 2006) (citation omitted).

## Discussion

Defendant moves for summary judgment, arguing that Plaintiff has not shown any actual damages or willfulness. (Doc. 85.)

### I. FCRA Claims

Plaintiff claims that Defendant willfully or negligently violated §1681s-2(b) of the FCRA. (Doc. 1-3 at ¶ 68.) Plaintiff alleges that Defendant reported fraudulent charges on Plaintiff's account to the CRAs which resulted in his debts and debt-to-credit ratio being overstated. (Doc. 1-3 at ¶¶ 17, 19.)

Section 1681s-2(b) of the FCRA outlines the duties Defendant has as a furnisher of information upon notice of a dispute from a CRA. 15 U.S.C. § 1681s-2(b). The statute reads, in relevant part:

> After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall—
>
> (A) conduct an investigation with respect to the disputed information;
>
> (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
>
> (C) report the results of the investigation to the consumer reporting agency;
>
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

6

(E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—

    (i) modify that item of information;

    (ii) delete that item of information; or

    (iii) permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b). Actual damages, costs, and reasonable attorney's fees are provided for in 15 U.S.C. § 1681o for negligent failure to comply with the requirements of § 1681s-2(b), and punitive damages, costs, and attorney's fees are provided for in 15 U.S.C. § 1681n for willful noncompliance.

Under 15 U.S.C. § 1681s-2(b), "once [Defendant] received notice of [Plaintiff's] dispute from a CRA, it was required to 'conduct a reasonable investigation of [its] records to determine whether the disputed information [could] be verified.'" *Meyer v. F.I.A. Card Servs., N.A.*, 780 F. Supp. 2d 879, 883 (D. Minn. 2011) (quoting *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 431 (4th Cir. 2004)). An investigation of this sort requires "some degree of careful inquiry by creditors." *Meyer*, 780 F. Supp. 2d at 883 (quoting *Johnson*, 357 F.3d at 430).

What constitutes a reasonable investigation will depend on the circumstances of each case "and on the quality of the documentation available to the furnisher," *Hrebal v. Seterus, Inc.*, 598 B.R. 252, 265 (D. Minn. 2019) (citations omitted), "**most importantly the CRA's description of the dispute in its notice.**" *Meyer*, 780 F. Supp. 2d at 883 (internal quotation marks omitted) (emphasis in original). When a plaintiff alleges fraud, a defendant's deference to standard procedures "calls into question the reasonableness of a cursory review." *Id.* (citing *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005)).

Generally, questions concerning the reasonableness of a furnisher's investigation are best suited for a jury to determine. *Id.* To survive summary judgment, Plaintiff "must present evidence that [Defendant] failed to comply with the provisions of §1681s-2 [and] must . . . present evidence of harm and causation, or willfulness entitling him to statutory or punitive damages." *Schaffhausen v. Bank of Am., N.A.*, 393 F. Supp. 2d 853, 858 (D. Minn. 2005) (quoting *Reed v. Experian Info. Sols., Inc.*, 321 F. Supp. 2d 1109, 1114 (D. Minn. 2004)).

7

## II. Actual Damages - 15 U.S.C. § 1681o

Defendant argues that Plaintiff has not established he suffered actual damages due to Defendant's alleged failure to complete a reasonable reinvestigation of Plaintiff's disputes under 15 U.S.C. § 1681s-2(b). (Doc. 86 at 7.) Plaintiff claims he has suffered actual damages in the form of (1) economic damages, (2) damages to creditworthiness and credit capacity, and (3) emotional distress damages. (Doc. 92 at 23.)

Actual damages, costs, and reasonable attorney's fees are provided for in 15 U.S.C. § 1681o for negligent failure to comply with the requirements of § 1681s-2(b). The scope of actual damages under the FCRA is not expressly defined in the statute, and the parties did not cite, nor did the Court's own research locate, Eighth Circuit authority on point. Thus, the analysis of Plaintiff's claimed actual damages will require some statutory interpretation.

Analysis requiring statutory interpretation "begins with the plain language of statute." *Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009). "If its language is plain, the statute must be enforced according to its terms." *League of Women Voters of Missouri v. Ashcroft*, 336 F. Supp. 3d 998, 1003 (W.D. Mo. 2018) (citing *Jimenez*, 555 U.S. at 118).

### a. Economic Damages

Actual damages under the FCRA may include economic damages. *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 239 (4th Cir. 2009). To obtain an award for actual damages, a plaintiff must establish a "causal relation between the violation of the statute and the loss of credit, or some other harm…." *McKeown v. Sears Roebuck & Co.*, 335 F. Supp. 2d 917, 931 (W.D. Wisconsin 2004) (quoting *Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 664 (7th Cir. 2001)).

Here, Plaintiff alleges that payments on the disputed hotel charges (including interest payments) are easily calculable economic damages. However, the Court finds that Plaintiff's payments on the disputed hotel charges are not the result of Defendant's alleged violation of the FCRA.

Defendant's statutory obligations were only triggered with its receipt of the February 2021 ACDVs sent by the CRAs, which occurred after Plaintiff's alleged economic damages (payments towards hotel charges) began accruing. In addition, even assuming for the sake of argument that Defendant found the hotel charges disputed by Plaintiff were inaccurate, incomplete, or unverifiable, under the plain language of 15 U.S.C. § 1681s-2(b), Defendant was then, at most, obligated to report the results of the investigation to the CRAs and "for purposes of reporting to a

8

consumer reporting agency only," either "modify that item," "delete that item," or "permanently block the reporting of that item[.]" Under the FCRA, which the Court is to enforce according to its terms, Defendant was not obligated to cancel or otherwise modify the disputed hotel charges as to its own accounts and collection efforts.

Plaintiff cannot establish Defendant's alleged violation of the FCRA resulted in his alleged economic damages consisting of the continued existence of the charges and accrual of interest on Plaintiff's USAA card accounts themselves. The charges and accruing interest fall outside the scope of the FCRA. Accordingly, Defendant is entitled to summary judgment as to Plaintiff's claim for economic damages consisting of the disputed charges on his accounts and the interest accruing thereon.

### b. Damages to Creditworthiness and Credit Capacity

Under the FCRA, actual damages may include injury to reputation and creditworthiness. *Hurocy v. Direct Merchants Credit Card Bank, N.A.*, 371 F. Supp. 2d 1058, 1061 (E.D. Mo. 2005) (citing *Cousin v. Trans Union Corp.*, 246 F.3d 359, 369 (5th Cir. 2001)). A denial of credit or higher interest rates resulting from an alleged reporting error may also constitute actual damages. *Hrebal*, 598 B.R. at 267 (quoting *Edeh v. Equifax Info. Servs., LLC*, 974 F. Supp. 2d 1220, 1242 (D. Minn. 2013)). The plaintiff must show that he or she "suffered damages *as a result of* the inaccurate information." *Id.* (alteration in original) (quoting *Edeh*, 974 F. Supp. 2d at 1242).

First, Plaintiff claims the disputed charges put him over his credit limit on his card ending in 6927,[6] which he testified prevented him from accomplishing his plan of transferring balances from other cards to the card ending in 6927 to take advantage of lower interest rates on that account. The interest rate for Plaintiff's card ending in 6927 was 8.5 percent Annual Percentage Rate ("APR") for regular purchases, while the interest rate for his card ending in 3733 was 14.4 percent APR, supporting a reasonable inference that Plaintiff would have benefitted from his planned balance transfer.

---

[6] Plaintiff states the disputed charges on the card ending in 6927 forced him over his credit limit, but Defendant only admits that *all* the charges on the statement put Plaintiff over his credit limit. (Doc. 92 at ¶ 19.) The credit card statement in question, closing on December 27, 2019, shows a balance of $21,290.76 despite a credit limit of $19,500.00. (Doc. 92-9.) Two charges of $1,135.56 each appear from the merchant "HOTEL VILLA OLYMPIC DE" for a total of $2,271.12. Thus, drawing all reasonable inferences in favor of the nonmovant, the Court assumes that without the disputed charges Plaintiff would have had a statement balance of $19,019.64, which would have been under his credit limit.

9

However, under a plain language interpretation of the relevant statute, the Court finds the alleged damages of having to maintain a high interest rate of 14.4 percent did not result from any arguable violation of the FCRA by Defendant.  This is because the CRAs are unable to transfer Plaintiff's account balances from one account to another.  Only the Defendant had the ability to transfer Plaintiff's USAA Savings Bank credit card account balances from one USAA card account to another USAA card account.  Under the FCRA, Defendant is not obligated to make account balance adjustments; under the FCRA, Defendant is only obligated to furnish information in compliance with the Act.  Thus, Plaintiff's inability to transfer one USAA credit card account balance to another USAA credit card account with a lower interest rate, falls outside the scope of damages recoverable in this FCRA action.

Next, Plaintiff testified that after submitting his initial disputes with Defendant, his application for a credit card was denied.  Plaintiff also received lower credit limits on his Barclays and Capital One credit cards when reapplying to open those cards after they had been cancelled due to lack of usage.  The record does not establish when Plaintiff experienced the denial of credit and lower credit limits, only that they occurred sometime after December 2019.  Because the Court must draw all reasonable inferences in favor of the nonmovant (Plaintiff), the Court must infer the denial of credit and lower credit limits for Plaintiff occurred after Defendant's statutory duties under the FCRA were triggered.

In support of Defendant's argument that Plaintiff cannot show actual damages, in the form of damages to creditworthiness and credit capacity, Defendant points to (1) Plaintiff's ability to obtain credit sufficient for a car loan, coupled with Plaintiff's admission that he was unsure whether the disputed hotel charges impacted the terms of his car loan, (2) there being no showing of any formal requests for information involving Plaintiff's credit report since Plaintiff lodged his disputes with the CRAs, and (3) Plaintiff's testimony in deposition that he was unsure whether he lost any credit opportunities.

However, drawing all reasonable inferences in favor of the nonmovant, there is evidence from which a reasonable jury could find that Defendant's actions in alleged violation of the FCRA caused Plaintiff injury to his creditworthiness due to the appearance of the disputed charges on Plaintiff's credit reports.  Plaintiff's evidence is sufficient to raise the reasonable inference that his denial of a credit card, and receiving lower credit limits on the Barclays and Capital One credit cards, may have resulted from the continued appearance of the disputed charges after the CRAs

sent Defendant the disputes. Thus, summary judgment is not warranted as to this aspect of Plaintiff's claim for actual damages.

### c. Emotional Distress Damages

Emotional distress damages may be recoverable as actual damages under the FCRA, but "must be supported by competent evidence of 'genuine injury,' which 'may be evidenced by one's conduct and observed by others.'" *Taylor v. Tenant Tracker, Inc.*, 710 F.3d 824, 828 (8th Cir. 2013) (quoting *Carey v Piphus*, 435 U.S. 247, 264 n. 20 (1978)). "Although injury may be established solely by a plaintiff's own testimony," *id.* at 829, conclusory allegations of "concern and frustration," "disappointment," and "embarrassment" are insufficient to establish the requisite concrete injury to recover for emotional distress. *Edeh*, 974 F. Supp. 2d at 1242, 1244.

Plaintiff admits he has not seen a therapist, has never taken medication for emotional distress, has not suffered physical injury resulting from his emotional distress, and offers no evidence of others observing any manifestation of his emotional distress. Nor does Plaintiff include a sworn statement describing his emotional distress. In short, even drawing all reasonable inferences in Plaintiff's favor, he offers no evidence of a concrete injury. Thus, Defendant is entitled to summary judgment as to Plaintiff's claim for emotional distress damages.

## III. Willfulness - 15 U.S.C. § 1681n

Punitive damages, costs, and attorney's fees are provided for in 15 U.S.C. § 1681n for willful noncompliance with the requirements of § 1681s-2(b). Even without a showing of actual damages, "a consumer can still recover punitive and statutory damages under section 1681n, if he can show that the defendant willfully failed to comply with the FCRA." *Graham v. CSC Credit Servs., Inc.*, 306 F. Supp. 2d 873, 879 (D. Minn. 2004).

Defendant contends that Plaintiff has not put forth evidence that establishes Defendant's willful noncompliance with the FCRA sufficient to defeat summary judgment. (Doc. 86 at 12; Doc. 93 at 14.) Plaintiff argues that willfulness under the FCRA is generally a question of fact for the jury, especially when the consumer alleges fraud in a credit reporting dispute, and thus, summary judgment is not appropriate. (Doc. 92 at 28.)

Under the FCRA, willfulness encompasses both knowing and reckless violations of the statute. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57-58 (2007). A Defendant "does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the [defendant] ran a risk of violating the law substantially greater

than the risk associated with a reading that was merely careless." *Id.* at 69. "'To show willful noncompliance with the FCRA, [the plaintiff] must show that [the defendant] knowingly and intentionally committed an act in conscious disregard for the rights of others, but need not show malice or evil motive.'" *Edeh*, 974 F. Supp. 2d at 1245 (citations omitted) (quoting *Bakker v. McKinnon*, 152 F.3d 1007, 1013 (8th Cir. 1998)). In the FCRA context, willful noncompliance requires "at least a showing of 'reckless disregard,' which is lower than a 'knowing violation' but higher than the 'negligence' standard pertaining to actual damages." *Edeh*, 974 F. Supp. 2d at 1245 (citing *Safeco Ins. Co. of Am.*, 551 U.S. at 57-59). "[T]o survive summary judgment on a willful non-compliance claim, a plaintiff must set forth affirmative evidence demonstrating 'conscious disregard' or 'deliberate and purposeful' actions necessary to make out a claim for willful noncompliance under the FCRA." *Edeh*, 974 F. Supp. 2d at 1245 (citations omitted).

Some of the ACDVs the CRAs sent Defendant coded the dispute as 103, indicating the account itself was fraudulently opened. Other ACDVs used code 104, indicating the account was taken over. Defendant contends the most important factor in setting the standard for determining the reasonableness of its investigation is the CRA's description of the dispute. While this is an accurate statement of law, Defendant's interpretation is too narrow.

Defendant claims the CRAs were struggling to code the disputes because Plaintiff's allegations challenged the charges with Defendant directly. Defendant claims the CRAs were unsure how to handle this dispute between a consumer and a creditor without allegations of a credit reporting issue. Thus, Defendant states they investigated what the CRAs told them to investigate.

Even if this is true, rote reliance on standard procedures based on a numerical dispute code does not automatically satisfy Defendant's FCRA obligation of a reasonable investigation as a matter of law. The ACDV forms each mention Plaintiff's allegations of fraud, notwithstanding the numerical dispute codes. Defendant conducted repeated, independent investigations based on each separate ACDV received and did not perform a complete, inclusive investigation of all their records for Plaintiff. This conduct creates a genuine issue of material fact as to whether Defendant's investigations were too narrow to comply with the FCRA.

Because Plaintiff alleged fraud, a reasonable jury could conclude that Defendant recklessly or consciously disregarded its FCRA obligations by ignoring or failing to give weight to documents, including the letter from the merchant hotel, that Defendant had in its possession regarding Plaintiff's accounts when investigating the disputes. Accordingly, genuine issues of

12

Case 4:21-cv-00579-RK   Document 108   Filed 11/15/22   Page 12 of 13

material fact exist as to whether Defendant willfully violated their FCRA obligations to perform a reasonable investigation. Thus, summary judgment on the issue of willfulness is not warranted.

## Conclusion

Accordingly, Defendant USAA Savings Bank's motion for summary judgment (Doc. 85) is **GRANTED IN PART and DENIED IN PART:**

Defendant's motion for summary judgment is **GRANTED** as to two of the three categories of actual damages claimed by the Plaintiff. Specifically, summary judgment is granted as to (1) economic damages, and (2) emotional distress damages stemming from Plaintiff's claim that Defendant negligently violated the Fair Credit Reporting Act ("FCRA").

The Defendant's motion for summary judgment is **DENIED** as to (3) damages to creditworthiness and credit capacity, and also denied in all other respects.

**IT IS SO ORDERED.**

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: November 15, 2022